925 F.2d 588
 55 Empl. Prac. Dec. P 40,568
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
LOCAL 580, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL
AND ORNAMENTAL IRONWORKERS, JOINT
APPRENTICE-JOURNEYMAN EDUCATIONAL FUND
... Allied Building Metal
Industries, Inc., Defendants,
Local 580, International Association of Bridge, Structural
and Ornamental Ironworkers, Joint
Apprentice-Journeyman Educational Fund,
Defendants-Appellants.
 No. 712, Docket 89-6257.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 11, 1991.
Decided Feb. 11, 1991.
 
 Carolyn L. Wheeler, E.E.O.C., Washington, D.C. (Donald R. Livingston, Gen. Counsel (Acting), Gwendolyn Young Reams, Associate Gen. Counsel, Lorraine C. Davis, Asst. Gen. Counsel, Johnnie L. Johnson, Gail Black, Paul Bogas, Washington, D.C., David Raff, New York City, of counsel), for plaintiff-appellee.
 Eugene P. Souther, Seward & Kissel, New York City (R. Scott Garley, Michael P. Enright, Mark D. Kotwick, New York City, of counsel), for defendants-appellants.
 Before KAUFMAN, NEWMAN and McLAUGHLIN, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 Title VII of the Civil Rights Act of 1964[1] was enacted by Congress to eradicate employment discrimination based on race. Enforcement of the statute's provisions was widespread and effective in the 1960's and 70's and resulted in dramatic improvements in the unbiased treatment of non-white employees and job applicants.
 
 
 2
 In 1971, several labor organizations were charged with racially discriminatory practices both in selecting apprentices and in extending job opportunities to minority members. Local 580, International Association of Bridge, Structural and Ornamental Ironworkers ("Local 580") and the Joint Apprentice-Journeyman Education Fund ("AJEF") settled claims against them by entering into a Consent Judgment with the Equal Employment Opportunity Commission ("EEOC") in 1978. This judgment imposed a wide range of specific obligations upon the labor organizations to ameliorate the effects of past racial discrimination and to insure future integration among the union membership. In exchange for their agreement to these terms, Local 580 and the AJEF escaped litigation of a costly and potentially damaging Title VII action.
 
 
 3
 Unfortunately, appellants have consistently failed to comply with requirements of the Consent Judgment over the years. The EEOC has instituted numerous enforcement actions, and the district court has found appellants in contempt of court on several occasions. Local 580 and the AJEF appeal from these rulings and seek reversal of additional remedies imposed by the lower court. For reasons set forth below, we reject appellants' claims and affirm the rulings of the district court.
 
 BACKGROUND
 
 4
 In 1978, Defendant-Appellants, Local 580 and the AJEF entered into a Consent Judgment with the Plaintiff-Appellee, the EEOC. Local 580 is an unincorporated labor organization of ornamental iron workers in New York City, Westchester, Nassau and Suffolk Counties. The AJEF is a joint management-labor organization that administers an apprentice training program, successful completion of which is the principal means of attaining membership in Local 580 as apprentices and journeymen.
 
 
 5
 Initiated in 1971, this action charged Local 580 with violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq., by engaging in a pattern and practice of discrimination against blacks and hispanics seeking admission into the union and against those minority members seeking jobs through the union's referral system. Allegations of disparate treatment tinged all aspects of Local 580's recruitment, selection, training and employment procedures. Accordingly, the Consent Judgment entered into by the parties in 1978, inter alia, permanently enjoined Local 580 and the AJEF from any such discrimination.
 
 
 6
 In 1984, the EEOC filed a motion seeking civil contempt, asserting that appellants had failed to uphold their obligations under the Consent Judgment. After a four-day evidentiary hearing involving charges of discrimination in the apprentice program, Judge Carter, in a thorough opinion (EEOC v. Local 580, et al., 669 F.Supp. 606 (S.D.N.Y.1987)) found the defendants in civil contempt of certain provisions of the Consent Judgment. The court ordered comprehensive relief in the form of numerous specific remedies. Then, in 1988, the EEOC moved for summary judgment against Local 580, alleging continued noncompliance with the terms agreed upon in the Consent Judgment. The district court granted summary judgment in favor of the EEOC, finding the union had violated provisions of the Consent Judgment related to its journeyman workers and ordered relief similar to that stipulated in the prior contempt order.
 
 
 7
 Local 580 and the AJEF subsequently appealed from all orders of the district court related to this case. The district court has made extensive factual findings over the course of this litigation. Information relevant to the issues on appeal is summarized briefly below.
 
 A. The Consent Judgment
 
 8
 The Consent Judgment permanently enjoins appellants from discriminating against "any individual or class of individuals on the basis of race, color, religion, sex or national origin." Consent Judgment Sec. II.1. It also establishes a detailed affirmative action plan for increasing minority membership in the union to twenty-four percent. This was to occur over a five year period dating from entry of the judgment in 1978. Certain other affirmative action provisions of the Consent Judgment state similar durational goals.
 
 
 9
 Because the AJEF-sponsored apprentice program is largely responsible for filling the ranks of Local 580, the Consent Judgment places significant emphasis on attracting minority candidates and producing minority graduates. Appellants are required by the Consent Judgment to alert specified organizations with ties to minority communities to the periodic formation of apprentice classes and administration of its entrance examination. This examination is required to consist of oral, medical and physical components, as well as a written aptitude test properly validated pursuant to the EEOC Guidelines on Employee Selection Procedures. A new procedure for distributing employment referrals to apprentices in training was devised, based solely upon each individual's qualifications, work experience, length of employment and number of consecutive days spent waiting for job placements. Local 580 agreed to curtail its practice of subjectively recommending particular apprentices to prospective employers.
 
 
 10
 As a means of monitoring Local 580 and the AJEF's compliance with these terms, the Consent Judgment requires that the union collect data and maintain detailed records pertaining to each aspect of the apprentice program. A corresponding duty to file this information regularly with the EEOC is also mandated. Finally, the Consent Judgment expressly reserves continuing jurisdiction to the district court. Consent Judgment Secs. VI.1, 2.
 
 B. Prior Proceedings and Remedies
 
 11
 Numerous court proceedings have been instituted as part of this litigation since its inception nearly twenty years ago. Disposition of two particular actions form the basis of the claims on appeal.
 
 
 12
 In 1987, the EEOC moved in the district court alleging that Local 580 and the AJEF had violated most provisions of the Consent Judgment. Denying the EEOC's request to seek relief on its papers alone, the district court set forth issues to be argued in an evidentiary hearing. The hearing was held from June 9 to June 15, 1987, and, based on evidence presented at that time, the court found Local 580 and the AJEF in contempt of court for failing to comply with provisions of the Consent Judgment. The court specifically noted violations of the nondiscrimination provisions regarding apprentice recruitment, selection, employment, training, recordkeeping and data production.
 
 
 13
 After carefully reviewing the extensive anecdotal, statistical and expert witness evidence presented during the hearing, Judge Carter, inter alia, made the following dispositive determinations. He found that appellants underutilized the apprentice program so as to limit minority membership and employment opportunities. Judge Carter also noted that Local 580 and the AJEF failed to afford requisite notice of the indenture of apprentice classes to the named organizations with ties to minority communities. With regard to the tests for admission to the apprentice program, the court found certain components to discriminate against minority applicants. In violation of the equal employment portions of the Consent Judgment, the court found:
 
 
 14
 the "evidence of discriminatory referrals was substantial. One minority apprentice after another testified about instances in which he waited as many as 60 days in the [Referral] Hall while white apprentices who had not been waiting as long were referred out ahead of them." EEOC v. Local 580, 669 F.Supp. at 621.
 
 
 15
 In addition, the court took note of evidence indicating retaliatory harassment of minority apprentices who assisted the EEOC in this litigation. Overall, the court found numerous instances where "barriers above and beyond facially neutral institutional policies barred or deterred prospective minority apprentices," id. at 615, in contravention of the injunction against acts or practices with the " 'purpose or effect' of discriminating against minorities in the recruitment or selection of apprentices." Id.
 
 
 16
 In May 1988, the court ordered implementation of extensive remedial measures. These included, inter alia: permanent injunctions against any discrimination in creation and operation of all aspects of the apprenticeship program, against violations of the recordkeeping and reporting requirements of the Consent Judgment, and against retaliation directed at individuals for cooperating with or providing information or assistance to the EEOC with regard to this litigation; appointment of a Special Master to oversee all aspects of the case and to supervise future compliance with each provision of the Consent Judgment and other court orders by virtue of broad, specifically enumerated powers, the cost of which was to be paid for by appellants; enumeration of mandatory methods of minority recruitment and application procedures; institution of a one-to-one selection ratio of white and non-white apprentices until nondiscriminatory selection criteria are established; specific alterations of job referral procedures to insure equal opportunities for minority apprentices; creation of backpay hearings at which apprentices may secure recompense for wages proven to have been foregone due to appellants' discriminatory actions; specification of record-keeping and reporting procedures; creation of a fund to pay for work equipment and school supplies for minority apprentices in financial difficulty; and publication of the judgment to inform minorities of their potential right to backpay.
 
 
 17
 In 1988, the EEOC moved for summary judgment, alleging that Local 580 had failed to comply with those provisions of the Consent Judgment related to its minority journeymen. Determining that issues of compliance remain properly within the jurisdiction of the court and discerning no material factual disputes, the district court granted summary judgment and found Local 580 in contempt of court. Remedies similar to those previously imposed with respect to the apprentice program were ordered. In addition, Judge Carter expanded the Special Master's role to include, among other powers, authority to determine whether the percentage goal for minority membership in Local 580 should be adjusted to reflect shifts in the labor market. Access to backpay relief hearings was extended to victims of discrimination in the journeyman program.
 
 DISCUSSION
 
 18
 On appeal, Local 580 and the AJEF challenge the district court's ongoing subject matter jurisdiction over the Consent Judgment, which they claim has expired. Appellants also challenge the court's finding of contempt following the evidentiary hearing on the apprentice issues and its order of summary judgment in favor of the EEOC with regard to the journeyman worker issues. Appellants also claim that the court improperly administered race-conscious remedies in the prior adjudications.
 
 A. Jurisdiction
 
 19
 During the 1988 summary judgment proceedings, Local 580 asserted that the Consent Judgment had expired before this particular motion was filed, and, thus, that the district court ceased to have subject matter jurisdiction to hear contempt claims. Local 580 contends that the Consent Judgment expired by its terms no later than January 21, 1984, approximately two weeks before the EEOC filed its motion for summary judgment. Appellant's claim is premised on the existence of certain time-limited goals and obligations contained in the Consent Judgment; several provisions were devised to endure five years from the date of entry of the Judgment in 1978.
 
 
 20
 Review of a court's jurisdiction over the subject matter of a claim is appropriate at any time during legal proceedings. Therefore, it is fitting that we turn first to this issue on appeal.
 
 
 21
 We find our ruling in Berger v. Heckler, 771 F.2d 1556 (2d Cir.1985), to be persuasive authority on the law governing a district court's enduring jurisdiction over consent judgments. In Berger, the Secretary of Health and Human Services objected to the district court's judgment finding her in contempt of court for violations of a consent decree regarding the right of aliens to receive social security benefits. The Secretary also objected to the court's expansion of the scope of the decree pursuant to its finding of noncompliance.
 
 
 22
 In affirming the district court's ruling, we noted that "[c]onsent decrees are a hybrid in the sense that they are at once both contracts and orders, see United States v. ITT Continental Baking Co., 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1975); they are construed largely as contracts, but are enforced as orders." Berger, 771 F.2d at 1567-68. We went on to note that because such decrees--or judgments--represent a "contract" entered into voluntarily for purposes of avoiding the risks associated with litigation, parties must accept limitations on the rights a successful lawsuit might otherwise have secured. We also held that, because a district court has a significant administrative interest in securing compliance with its orders, it "may take such [remedial] steps as are appropriate given the resistance of the noncompliant party." Id. at 1569. And, though a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad.
 
 
 23
 Where equitable remedies which exceed the confines of the consent judgment are reasonably imposed in order to secure compliance of the parties, the court has not overstepped its bounds, and its orders must be obeyed.
 
 
 24
 Interpreting the language of the Consent Judgment, as one would with any contract, we find no indication that the agreement was meant to expire after five years. Significantly, the Judgment contains an express "Continuing Jurisdiction" clause which clearly states that "[a]t any time, any of the parties hereto or their successors, may apply to the court for the purpose of seeking additional orders to insure the full and effective implementation of the terms and intent of this judgment.... The complaint is dismissed, but the Court will retain jurisdiction to assure compliance with this judgment." Consent Judgment Secs. VI.1, 2 (emphasis added ). The plain language of this provision gives the court jurisdiction of indeterminate duration to oversee compliance with the Consent Judgment.
 
 
 25
 Local 580's contention that the existence of certain time-limited provisions of the Consent Judgment reflect an overarching deadline is unfounded. As the district court properly noted, even those stipulations upon which Appellants rest this erroneous conclusion contain clauses extending their duration in case of noncompliance. For example, though sections III.A.1, 2, and 3(a) require an increase in minority membership of Local 580 to 24 percent within five years, section III.A.3(b)(ii) goes on to state that "defendants ... shall take no direct or indirect action which has the purpose or effect of allowing the percentage goals of non-white members to fall below those set forth above at any time during the year after which such goals are to be established" (emphasis added ). The agreement, therefore, expressly provides for an additional year if necessary. Similarly, as the district court noted, a provision requiring Local 580 to notify the EEOC each time it indentures an apprentice class over the five-year period also specifies that the EEOC must be alerted upon termination of any individual from any three-year apprentice program, thereby increasing Local 580's effective reporting responsibilities to eight years. As Judge Carter properly concluded, "[i]n light of these provisions, it is clear that Local 580's obligations under the consent judgment were not intended to expire July 21, 1983. When the EEOC filed its pending contempt motion in February 1984, these obligations were unquestionably still in force." EEOC v. Local 580, No. 71 Civ. 2877 at 6, 1988 WL 131293 (S.D.N.Y. December 15, 1988). Moreover, as with any contract, deadlines for performance in a consent decree do not implicitly circumscribe the time period for asserting breach of contract claims.
 
 
 26
 In addition, the court has inherent power to enforce consent judgments, beyond the remedial "contractual" terms agreed upon by the parties. Unlike a private agreement, a consent judgment contemplates judicial interests apart from those of the litigants. Until parties to such an instrument have fulfilled their express obligations, the court has continuing authority and discretion--pursuant to its independent, juridical interests--to ensure compliance.
 
 
 27
 There is no question that the district court retains jurisdiction over the Consent Judgment, at least until such time as appellants have fully complied with its substantive terms.
 
 B. Contempt Proceedings
 
 28
 Appellants claim the district court erred both in finding Local 580 and the AJEF in contempt of court pursuant to the 1987 apprentice program evidentiary hearing, and in granting summary judgment in favor of the EEOC with regard to Local 580's alleged contempt violations of the journeyman provisions in 1988.
 
 
 29
 Because the extraordinary weight of evidence uncovered in several prior proceedings indicates appellants acted with deliberate and egregious indifference to their obligations under the Consent Judgment, we find their current arguments to be without merit.
 
 
 30
 As the district court correctly noted, appellants may be held in civil contempt for "failure to comply with an order of the court if the order being enforced is 'clear and unambiguous, the proof of noncompliance is "clear and convincing," ' and the [appellants] have not 'been reasonably diligent and energetic in attempting to accomplish what was ordered.' " EEOC v. Local 638 ... Local 28 of the Sheet Metal Workers' Int'l Ass'n, 753 F.2d 1172, 1178 (2d Cir.1985), aff'd, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986) (citations omitted). Judge Carter reasonably determined, following a lengthy evidentiary hearing, that appellants' actions violating terms of the Consent Judgment relating to the apprentice program constituted civil contempt of court. Because his findings were not clearly erroneous, they should not be disturbed.
 
 
 31
 We now reiterate the standards which guide us on this appeal. Our review of the lower court's summary judgment order entails de novo consideration of the relevant facts. Meiri v. Dacon, 759 F.2d 989 (2d Cir.), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Only if we determine that these facts reflect a material dispute between the parties are we required to set aside the summary judgment.
 
 
 32
 In particular, the EEOC's motion alleges that Local 580 did not comply with requirements of the Consent Judgment involving: submission of reports to the EEOC; proper maintenance of internal records; augmentation of its minority membership; validation of the journeyman's test; and promotion of equal employment opportunities to minority members.
 
 
 33
 As the district court noted, resolution of many of these issues has been achieved through the discovery process undertaken in prior proceedings. With regard to allegations of insufficient record-keeping and recording, the district court properly recounted relevant portions of the history of this litigation, stating:
 
 
 34
 This issue has been before the court before, and the earlier decisions compel a ruling against Local 580 on these claims. In the 1985 decision on an EEOC motion for sanctions to compel discovery, it was held that the reports submitted to the EEOC by Local 580 failed to satisfy the requirements of sections IV.19 and IV.20 of the consent judgment. EEOC v. Local 580 et al., 71 Civ. 2877, slip. op. at 2-7. In the 1987 contempt order, it was similarly held that Local 580 had failed to collect, preserve and report data [including data related to the journeyman workers] to the EEOC as required by the consent judgment.
 
 
 35
 EEOC v. Local 580, No. 71 Civ. 2877 at 12 (S.D.N.Y. December 15, 1988).
 
 
 36
 The district court went on to comment, and we agree, that appellant's persistent refutation of its noncompliance with the record-keeping and reporting requirements "verges on contempt in and of itself." Id. The court also reasonably found that Local 580 had violated provisions of the Consent Judgment requiring an increase in its minority membership within the allotted time period.
 
 
 37
 Local 580 admits it has failed, to this date, to validate its journeyman test in accordance with EEOC guidelines, as stipulated in the consent decree. We disagree with appellant's assertion that this represents a mere "technical" violation, but instead find it an integral aspect of appellant's overall failure to eradicate discriminatory obstacles to minority membership.
 
 
 38
 Finally, Local 580 asserts that triable issues exist regarding its alleged failure to provide equal employment opportunities to minority journeymen seeking job referrals. Again, however, we find ourselves in agreement with the determination of the district court that appellant's failure to maintain the required records should not work in its favor by forcing a trial when summary judgment is the more appropriate disposition. Local 580 has consistently avoided a precise chronicling of the comparative employment histories of white and non-white journeymen, as mandated by the Consent Judgment. Therefore, based on the EEOC's evidence--in conjunction with the court's earlier admonition that dereliction by the union of its record-keeping duties would lead to a presumption that "the information, had it been supplied, would have revealed a violation of the consent judgment," EEOC v. Local 580, No. 71 Civ. 2877 at 6, 1985 WL 1510 (S.D.N.Y. May 31, 1985)--we find sufficient support for the district court's summary judgment order.
 
 C. Remedies
 
 39
 The final issue we will address involves the propriety of relief ordered by the district court pursuant to its contempt findings. In particular, appellants object to the court's imposition of so-called "race-conscious" remedies to effectuate compliance with the consent decree.
 
 
 40
 Absent abuse of discretion, a reviewing court should not disturb remedies to enforce a consent judgment by the district court pursuant to its inherent contempt powers. Chance v. Board of Examiners, 561 F.2d 1079, 1085-86 (2d Cir.1977). In civil contempt cases, a court has discretion to fashion sanctions which are necessary to coerce compliance with its orders, and remedies which "compensate complainant for losses sustained." Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986), citing United States v. Mine Workers, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701-02, 91 L.Ed. 884 (1947). With regard to race-conscious remedies in particular, the Supreme Court has held that "such relief may be appropriate where an employer or a labor union has engaged in persistent or egregious discrimination, or where necessary to dissipate the lingering effects of pervasive discrimination." Id. at 445, 106 S.Ct. at 3034.
 
 
 41
 The overwhelming evidence in this case establishes the soundness of those remedial measures ordered by the district court. For more than a decade, appellants have failed to comply with the requirements of the Consent Judgment they voluntarily entered into with the EEOC. Accordingly, after each subsequent finding of contempt, Judge Carter reiterated the original demands of the agreement and incrementally expanded the means of enforcing compliance. The court's purpose has always been to eradicate the practices and effects of racial discrimination in the union and its apprentice program. Its efforts to achieve this goal have been consistently reasonable and restrained--they have certainly not reflected an abuse of judicial discretion.
 
 
 42
 By simply authorizing the Special Master to consider adjustment of the numbers of minority apprentices participating in the training program and minority journeymen receiving employment referrals, Judge Carter has not violated the Supreme Court's standards concerning racial quotas. City of Richmond v. J.A. Croson Co., 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). The Special Master has yet to impose such numerical requirements. Accordingly, the claim is not ripe for adjudication.
 
 CONCLUSION
 
 43
 Other, meritless issues have been presented for our consideration. We are of the view that further discussion--after this necessarily lengthy and detailed opinion--would not add anything of significance. We are primarily concerned with the pattern of disregard for court orders manifested by appellants. In continuing to conduct their affairs in violation of the Consent Judgment, Local 580 and the AJEF have compelled the findings of contempt against them.
 
 
 44
 In light of the foregoing, we view the remedies adopted by the district court as appropriate, and we affirm its rulings.
 
 
 
 [1]
 Equal Employment Opportunities Act, 42 U.S.C. sections 2000e to 2000e-17 (1976 & Supp. V 1981)