EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

LOCAL 40, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, ... The Joint Apprenticeship Committee, Iron Workers Locals 40 & 361 ... and Allied Building Metal Industries, Defendants.

No. 71 Civ. 2877 (RLC).

United States District Court,
S.D. New York.

Dec. 14, 1994.

**490**

E.E.O.C. Washington, DC (Johnnie L. Johnson, of counsel), for plaintiff E.E.O.C.

C. Vernon Mason, New York City, for plaintiff-intervenors.

Colleran, O'Hara & Mills, Garden City, NY (Edward J. Groarke, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs Roysworth D. Grant and Willie Ellis seek to have defendants Local 40, Bridge, Structural and Ornamental Ironworkers ("Local 40"); the Joint Apprenticeship Committee, Iron Workers Locals 40 & 361; and Allied Building Metal Industries found in contempt of court for their failure to comply with two orders—one issued by Judge Werker in *EEOC v. Local 638 ... Local 40*, No. 71 Civ. 2877 (S.D.N.Y. March 5, 1980) (Werker, J.) ("Werker Order"), and one issued by Judge Knapp in *Grant v. Bethlehem Steel Corp. and Local 40*, 76 Civ. 847 (S.D.N.Y. May 14, 1979) (Knapp, J.) ("Knapp Order"). Defendants contest the court's jurisdiction to issue contempt orders in both cases.

### I.

In 1975, Grant and Ellis brought a complaint on behalf of themselves and a class of minority ironworkers before Judge Knapp of this court alleging that Local 40 and Bethlehem Steel Corporation had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. They subsequently amended the complaint to allege that Local 40 had retaliated against them for bringing the original complaint. Judge Knapp found that retaliation had occurred, and he ordered the union to stop retaliating, to refer Grant and Ellis to employment on the same basis as other workers, and to pay their attorneys' fees and reimburse them for back pay. *Grant v. Bethlehem Steel Corp.,* No. 76 Civ. 847 (S.D.N.Y. May 14, 1979) (Knapp, J.), *aff'd,* 622 F.2d 43 (2d Cir.1980).

The plaintiffs seek to enforce the Knapp order in this court, "present[ing] the anomalous proceeding of one [judge] taking cognizance of an alleged contempt committed before and against another [judge], which possesse[s] ample powers, itself to take care of its own dignity and punish the offender." *Ex parte Bradley,* 74 U.S. (7 Wall.) 364, 372, 19 L.Ed. 214 (1868). A motion for contempt of an order issued by Judge Knapp should be brought before Judge Knapp. Plaintiffs have proffered no reasons why Judge Knapp cannot hear the contempt motion, so I decline to exercise jurisdiction over the motion for contempt of the Knapp order.

### II.

In 1971, the United States filed a complaint charging a number of unions and contractors' associations, including defendant Local 40, with violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Local 40 case was subsequently severed. After a three-day trial Judge Gurfein found that defendant Local 40 had violated Title VII, and he issued an order requiring it to remedy its discriminatory practices by instituting specific membership and referral policies and practices. *United States v. Local 638,* 347 F.Supp. 169 (S.D.N.Y.1972) (Gurfein, J.). In 1977, the EEOC (which had been substituted as a party for the United States) sought to hold Local 40 in contempt for violation of Judge Gurfein's order, and plaintiffs Grant and Ellis intervened, along with Louis Martinez, who is not a party to this contempt motion. The parties entered into a consent decree, signed by Judge Werker (who had inherited the case from Judge Gurfein), which permanently enjoined Local 40 from discriminating against minorities and ordered further changes in the union's referral practices, *EEOC v. Local 638 ... Local 40,* No. 71 Civ. 2877 (S.D.N.Y. March 5, 1980) (Werker, J.), and which the plaintiffs now seek to enforce. Upon Judge Werker's demise, I inherited the case.

Since 1980, Grant and Ellis have written numerous letters to the union and have filed several charges with the EEOC alleging that the union has violated the Werker order. In 1989, the EEOC commenced an investigation into Local 40's compliance with the order and subsequently received various records from Local 40, which it is still reviewing.

In their contempt motion and the accompanying affidavits, Grant and Ellis make numerous allegations, several of which pertain to the Knapp Order and are thus not under the purview of this proceeding. Other allegations, however, if proven, go to the very heart of the job referral system set up by the Werker Order and would constitute serious violations of it. These include (but are not limited to) failure to offer referrals to members of Local 40 present in the hiring hall, failure to issue consecutive referral preference numbers to all eligible applicants, failure to refer applicants according to the lowest referral preference number, failure to announce requests for referral in the order they are received, failure to allow eligible applicants the opportunity to bid on each referral request, and maneuvering special requests for the purpose of not referring Grant and Ellis to long-term positions as stewards or foremen.

▮ This court has inherent and statutory power to enforce its decrees and to punish violators for contempt. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–765, 100 S.Ct. 2455, 2463–2464, 65 L.Ed.2d 488 (1980); 18 U.S.C.A. § 401 (1966). Local 40 claims, however, that the court currently lacks jurisdiction to enforce the Werker decree on the grounds that it expired in 1983. It claims further that the plaintiffs lack standing to bring a contempt motion and that any claims for relief are barred by the doctrine of laches.

### A.

Local 40 asserts that the court no longer has jurisdiction to enforce Judge Werker's order because of a clause in the consent decree ("the termination clause") which reads:

This Order, as modified, shall expire three (3) years from the date of entry hereof; notwithstanding the foregoing, EEOC shall have the right, upon good cause shown, to make application to the Court at least thirty (30) days prior to the expiration of this Order to have the same extended beyond the expiration date on such terms and conditions as the Court may direct.

(Werker Order ¶ 13.) The EEOC has never moved for extension of the decree, and the union argues that the decree was dissolved in 1983.

The union's argument confuses the court's supervisory jurisdiction over the case with its continuing jurisdiction to enforce its permanent injunctions. *See generally* Lloyd C. Anderson, *Release and Resumption of Jurisdiction Over Consent Decrees in Structural Reform Litigation*, 42 U.Miami L.Rev. 401 (1987) (discussing the distinction between releasing jurisdiction over a case and dissolving a decree). Institutional reform litigation often requires judges to be closely involved in the detailed workings of an institution over what may be a fairly long period of time, and "a court that has entered such a decree may pass through *levels* of disengagement as the decree moves toward achievement." *Consumer Advisory Bd. v. Glover*, 989 F.2d 65, 67 (1st Cir.1993). The court will be most involved during the supervisory stage, when the judge is "concerned not with the enforcement of a remedy already given, but with the giving or shaping of the remedy itself." *Battle v. Anderson*, 708 F.2d 1523, 1538 (10th Cir.1983) (quoting Owen Fiss, *Forward: The Forms of Justice*, 93 Harv.L.Rev. 1, 27–28 (1979)). During this period, the judge may appoint special masters, pay attention to details of the remedy, and adjust time tables. *Consumer Advisory Bd.*, 989 F.2d at 67.

The court and the parties will eventually develop a remedy that no longer requires fine-tuning by the court and which can function without close court supervision. Although the court will reduce its involvement in the case, it retains the power to ensure that the parties comply with the remedy and that the goals of the decree are attained. There are two sources of this power. First, courts must protect the interests of parties to

the decree. " '[A] court has an affirmative duty to protect the integrity of its decree....' A defendant who has obtained the benefits of a consent decree—not the least of which is the termination of the litigation—cannot then be permitted to ignore such affirmative obligations as were imposed by the decree." *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.1985) (cite omitted). In order to protect this interest, the court must allow parties to enforce its injunctions through contempt proceedings. As the Seventh Circuit has observed, "No one wants an injunction that cannot be enforced, or that can be enforced only by bringing a fresh suit.... An injunction is supposed to be a swift and effective remedy, summarily enforceable through contempt or other supplementary proceedings in the court that issued the injunction." *McCall–Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir.1985). Second, "a district court has a significant administrative interest in securing compliance with its orders." *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers*, 925 F.2d 588, 592 (2d Cir.1991). "Where 'a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.'" *Berger*, 771 F.2d at 1568 (quoting *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971)).

■ A court's power to enforce its permanent injunctions does not end until the injunction itself has ended, even if the court has not explicitly reserved jurisdiction. *McCall–Bey*, 777 F.2d at 1183. The parties remain obligated by the court's orders, and the court retains the power to enforce its orders, until the court concludes that the underlying statutory or constitutional violation has been eliminated, *Battle*, 708 F.2d at 1538, and issues "a rather precise statement" of its intent to end the injunction. *Bd. of Educ. v. Dowell*, 498 U.S. 237, 246, 111 S.Ct. 630, 636, 112 L.Ed.2d 715 (1991).

■ In this case, Judge Werker's order was entered in the form of a consent decree, which is "no more than a settlement that contains an injunction." *Hurley v. Coughlin*, 158 F.R.D. 22 (S.D.N.Y.1993) (Carter, J.). A consent decree is interpreted as a contract, so the meaning must "be discerned within its four corners, and not by reference to what might satisfy the purposes of the parties to it," *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), and "deference is to be paid to the plain meaning of the language of [the] decree and the normal usage of the terms selected." *Berger*, 771 F.2d at 1568. Within the context of this rule, the court can also take into account "the circumstances surrounding the formation of the consent order." *Berger*, 771 F.2d at 1568 (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975)). Consent decrees are enforced as an order of the court, *Berger*, 771 F.2d at 1567–68, and as with other types of orders, the injunctions they contain are enforceable even after the court has ended its close supervision of the case. *McCall–Bey*, 777 F.2d at 1183; *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137, 142 (5th Cir.1985).

■ The decree indicates that the injunctions contained in Judge Werker's order not stating that they are time-limited were clearly not intended to terminate three years after entry of the order. The first paragraph of the injunction reads, "Defendant, Local 40, its officers, agents, members, employees and servants are permanently enjoined and restrained from discriminating against Blacks and other minority group members because of their race and/or national origin *in violation of this Order*." (Werker Order ¶ 1) (emphasis added). The union asserts that this language was merely "a precatory recital by Local 40 that it agreed to comply with governing law," (Local 40 Mem.Opp'n Contempt Mot.) but this interpretation ignores the fact that the paragraph specifically enjoins Local 40 from violating the order, not from violating the law. The permanent injunction clearly indicates that the order's provisions were meant to be permanent unless otherwise specified in the order itself.

The order sets the parameters by which Local 40 must operate its referral hall, and in doing so it gives no indication that the union may alter the operation of the referral hall

and revert back to its previous discriminatory practices after three years. None of the provisions that describe the operation of the referral hall contains a time limit. On the contrary, several provisions require the union to keep "permanent" records of its hiring hall activities, implying that the activities the records memorialize are intended to operate in perpetuity. For example, the union is required to issue consecutive numbers ("referral presence numbers") to all job applicants in the order they appear in the referral hall and to keep a permanent log of these numbers. (Werker Order ¶ 3.) There would be no reason to keep permanent records of job-seekers' referral presence numbers unless the referral presence system was intended to operate permanently as well. *See also* Werker Order ¶ 4 (union must keep a "permanent" register of people in attendance at the referral hall each day). The provision requiring Local 40 to name as union stewards a certain number of minorities is also intended to operate permanently, as is clear from the fact that it sets out requirements that Local 40 must satisfy "each year." (Werker Order ¶ 8.)

The structure of the decree indicates that the parties anticipated that following entry of the order, details of the operation of the referral hall would have to be adjusted and the union's compliance would have to be monitored closely. Accordingly, they established the EEOC as the primary monitor of the decree, ordering the union to make available to the EEOC a wide variety of records. *See, e.g.* Werker Order ¶ 9 (every three months for two years union must provide EEOC with sign-in sheets, steward reports, referral books, list of people working or seeking work within the jurisdiction); Werker Order ¶ 10 (union must provide EEOC with information regarding alleged violations of bidding procedures and lay-offs allegedly in violation of order). The EEOC was also supposed to make an initial attempt to negotiate solutions to disputes regarding the interpretation and implementation of the decree. (Werker Order ¶ 12.) If the EEOC was unsuccessful, however, the court remained available to enforce the decree and to implement new measures to ensure compliance. (Werker Order ¶¶ 11, 12.)

The parties expected that after a few years the referral hall system would be in place and close monitoring would no longer be necessary. Accordingly, the requirement that the union provide the EEOC with referral hall records on a regular basis ended after two years. (Werker Order ¶ 9.) The parties also assumed that once the referral hall had operated for a few years, they would have fewer disagreements over its operation, and there would no longer be a need for the EEOC to make a first attempt to resolve all disputes. Consequently, unlike other provisions in the order, plaintiffs were required to bring their complaints first to the EEOC only "during the duration of this Order," (Werker Order ¶ 12) in other words, only during the first three years after its implementation. (Werker Order ¶ 13.) Viewed in light of the fact that the decree anticipates a period of intense monitoring followed by a period in which the union operated the referral hall with less intense scrutiny, it is evident that the termination clause was intended to end the period of close supervision by the court and by the EEOC,[1] but not to dissolve the injunctions included in the decree.

Even if the parties had intended for the termination clause to dissolve the injunctions, however, the clause does not provide the clear statement of their intent to end the injunction required by *Dowell*. The permanent injunction in the first paragraph of the decree and the fact that the referral hall and the minority stewards provisions were intended to be permanent render the termination clause at least ambiguous. *Dowell*, 498 U.S. at 246, 111 S.Ct. at 636.

Furthermore, there are many cases in which judges have used language similar to

---

1. The fact that the court allowed its supervisory jurisdiction to expire in 1983 does not mean that the court can never revive it. If the plaintiffs make a showing that the union has not complied with the terms of the decree, the court may enter whatever relief it deems necessary to enforce compliance, *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers*, No. 71 Civ. 2877, 1988 WL 131293, at *1 (S.D.N.Y. December 1, 1988) (Carter, J.), including reviving its close scrutiny of the operations of the referral hall.

the termination clause to end supervision of a case while not dissolving a consent decree. In *Youngblood v. Dalzell,* the district court stated that its oversight "is hereby terminated" and directed the clerk "to close this case forthwith," *Youngblood v. Dalzell,* 704 F.Supp. 137, 139 (S.D.Ohio 1989), but on the same day it stressed that the decree was "still in full force and effect and governs the actions of defendant City of Cincinnati." *See Youngblood v. Dalzell,* 925 F.2d 954, 957 (6th Cir.1991). Similarly, in *Consumer Advisory Bd. v. Glover,* the district judge wrote in an order that he " 'discharged' the remaining defendants 'from the supervision of the Court' " and stated that the order meant "the end of this Federal Court's involvement with Maine's care of the mentally retarded." *Consumer Advisory Bd.,* 989 F.2d at 66–67. Nonetheless, the First Circuit found that the order was "at best ambiguous" and ruled that the order did not dissolve the underlying decree. *Consumer Advisory Bd.,* 989 F.2d at 68. *See also Dowell,* 498 U.S. at 246, 111 S.Ct. at 636 (statement by district judge that "[j]urisdiction in this case is terminated ipso facto" was too ambiguous to dissolve the consent decree); *Roberts v. St. Regis Paper Co.,* 653 F.2d 166, 171 (5th Cir.1981) (5–year limit on court's jurisdiction merely ended court's authority to enter further orders or to modify the decree; it did not end court's power to enforce the relief already granted in the decree); *Holt v. Hutto,* 363 F.Supp. 194, 216 (E.D.Ark.1973) (ending supervisory jurisdiction over Department of Corrections but noting that "release of jurisdiction will not impair the validity and continuing effect of its injunctions" or the court's power to enforce them through contempt proceedings), *rev'd in part on other grounds sub nom. Finney v. Arkansas Bd. of Correction,* 505 F.2d 194 (8th Cir.1974).

Since the termination clause did not dissolve the consent decree, the court has jurisdiction to enforce the decree, even though the decree lacks a clause specifically reserving that jurisdiction. Furthermore, even if the parties to the decree had meant to dissolve it after three years, "the court has inherent power to enforce consent judgments, beyond the remedial 'contractual' terms agreed upon by the parties. . . . Until

parties to such an instrument have fulfilled their express obligations, the court has continuing authority and discretion . . . to ensure compliance." *Local 580,* 925 F.2d at 593. If a party has not complied with the decree, it "suffers no injustice if the decree is then extended or reimposed for a period of time long enough to ensure that the recalcitrant party fulfills its obligations." *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers,* No. 71 Civ. 2877, 1988 WL 131293, at *3 (S.D.N.Y. December 1, 1988) (Carter, J.).

### B.

■ Grant and Ellis clearly have standing to enforce the Werker order pursuant to their status as plaintiff-intervenors in the case. Even if Grant and Ellis were not parties, they would have standing to enforce the order pursuant to Rule 71 of the Federal Rules, *Berger,* 771 F.2d at 1565, because they are part of the class of all minority members of Local 40 intended to be beneficiaries of the order. (Werker Order ¶ 1.)

The union contends, however, that only the EEOC can enforce the Werker order, pointing to paragraph twelve of the order which reads:

In the event that at any time during the duration of the Order any party believes that Defendant Local 40 is in violation of the terms of the Order, EEOC shall notify Defendant in writing of the alleged violation, and if the parties are unable to resolve the dispute within sixty (60) days after such notice, the EEOC may move the court to resolve the dispute.

(Werker Order ¶ 12.) The purpose of this clause is to require members of the plaintiff class to bring complaints regarding violation of the order first to the EEOC so that it may attempt to negotiate a solution. As previously discussed, this mechanism was intended to operate only "during the duration of the Order," so it expired along with the rest of the court's supervisory jurisdiction in 1983.

Even if paragraph twelve were still in effect, it would not preclude Grant and Ellis from bringing a complaint directly to this court because it merely states that if the

EEOC is unable to resolve the dispute it *may* move the court to provide relief. Paragraph twelve does not state that other parties may not seek relief from the court, and thus it does not purport to prescribe the sole manner in which the decree may be enforced. In a related case, a union defendant argued that a provision in a consent decree which said that in case of dispute "the parties *may* make a complaint to the administrator" meant that the parties were precluded from complaining directly to the court. Judge Werker said that this argument was "specious and merit[ed] little discussion," *EEOC v. Local 638 ... Local 28 Sheet Metal Workers' Int'l Ass'n*, No. 71 Civ. 2877, 1982 WL 445, at *3 (S.D.N.Y. Aug. 16, 1982) (Werker, J.), and the Second Circuit ruled that use of the word "may" showed that while the provision "provided one means to resolve disputes, it was not the only means...." *EEOC v. Local 638 ... Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1179 (2d Cir. 1985), *aff'd*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986). Given this Second Circuit precedent, the court cannot follow *Rule v. Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, Local No. 396*, 423 F.Supp. 373, 381 (E.D.Mo.1976), *aff'd in part*, 568 F.2d 558 (8th Cir.1977), in which a district court ruled that a provision similar to paragraph twelve vested in the government an exclusive right to bring enforcement actions.

█ The union contends that by requesting the EEOC to enforce the order the plaintiffs have waived any right they might have to enforce the order and also that by investigating the union's contempt the EEOC has assumed a role as the sole enforcer of the decree. These arguments deserve short shrift. Nowhere in the many letters that Grant and Ellis have written (without the benefit of counsel) to various government officials pleading for help do they indicate that they are waiving any rights to enforce the decree themselves. In undertaking its ongoing investigation of possible contempt by the union, the EEOC did not view itself as the sole enforcer of the decree—in fact, it has written a memorandum of law supporting Grant and Ellis' right to bring their contempt motion.

III.

The court declines to assert jurisdiction over the motion for contempt of Judge Knapp's order. The court asserts jurisdiction over any contempt arising from Judge Werker's order.

The court will schedule a conference with all of the parties, including the EEOC, for January 1995, at a time convenient to the parties and the court, during which Grant and Ellis should set out *with specificity* which allegations of noncompliance pertain to the Werker and Gurfein orders, the EEOC should report on the status of its investigation into possible noncompliance by Local 40, and the court and the parties will discuss the need for discovery and hearings in this matter.

The court reserves consideration of the union's laches defense until a later date.

**IT IS SO ORDERED.**