76 F.3d 76
 67 Empl. Prac. Dec. P 43,915
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
LOCAL 40, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL
AND ORNAMENTAL IRON WORKERS, the JOINT APPRENTICESHIP
COMMITTEE, IRON WORKERS LOCALS 40 & 361 ... AND ALLIED
BUILDING METAL INDUSTRIES, Defendant-Appellant.
 No. 148, Docket 95-6011.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 5, 1995.
Decided Feb. 12, 1996.
 
 Edward J. Groarke, Garden City, NY (John F. Mills, and Carol L. O'Rourke, James Brown, Colleran, O'Hara & Mills, Garden City, NY, of counsel), for Defendant-Appellant.
 Karen M. Moran, Equal Employment Opportunity Commission, Washington, D.C. (John P. Rowe, General Counsel (Acting), Gwendolyn Young Reams, Associate General Counsel, and Vincent J. Blackwood, Assistant General Counsel, Equal Employment Opportunity Commission, Washington, D.C., of counsel), for Plaintiff-Appellee.
 Before: ALTIMARI, McLAUGHLIN, and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 In October 1993, plaintiff-intervenors Willie Ellis and Roysworth D. Grant asked a district court to find appellant Local 40 in contempt of court for discriminating against nonwhite union members and applicants in violation of a 1980 consent decree. Local 40 appeals from the order of the Southern District of New York (Carter, J.) asserting subject matter jurisdiction over this motion for contempt. The union also challenges the standing of the individual plaintiffs. For the following reasons, we hold that the consent decree had expired by its own terms before the commencement of contempt proceedings. The order of the Southern District of New York asserting jurisdiction over this matter based on the 1980 consent decree is reversed.
 
 BACKGROUND
 
 2
 On June 29, 1971, the Department of Justice instituted a lawsuit against several construction trade unions, charging that they had discriminated against nonwhite members and applicants in violation of Title VII, 42 U.S.C. §§ 2000e-17 (1994). The complaint named appellant Local 40 as a defendant. After a bench trial in which he found that Local 40 had engaged in unlawful discrimination, Judge Gurfein issued an order on December 18, 1972, requiring Local 40 to implement certain changes in its membership and referral practices. See United States v. Local 638, 347 F.Supp. 169 (S.D.N.Y.1972).
 
 
 3
 In 1977, the EEOC, which had been substituted for the United States as plaintiff in the suit, commenced contempt proceedings against Local 40 for alleged noncompliance with Judge Gurfein's order. Grant, Ellis, and a third individual, Louis Martinez, were granted plaintiff-intervenor status in the suit by Judge Werker, who had inherited the case from Judge Gurfein. In 1980, the parties settled the lawsuit by entering into a consent decree. EEOC v. Local 638, No. 71 Civ. 2877 (S.D.N.Y. Mar. 5, 1980). That decree, the terms of which are at issue in the present suit, is referred to by the parties as the "Werker Order."
 
 
 4
 In the Werker Order, Local 40 expressly agreed to take certain affirmative steps to ensure fairness in hiring and referrals. The union would retain a "permanent log" of all persons in attendance at the referral hall each day, and of all applicants for referral. It agreed to assign a number to each applicant, based consecutively on the time he applied for a referral, and to award referral preference based on numbers alone. The union also agreed that it would name as union stewards a percentage of minorities at least equal to the percentage of minority members in the union. The decree contained two passages that are of particular relevance to the present dispute:
 
 
 5
 1. Defendant, Local 40, its officers, agents, members, employees and servants are permanently enjoined and restrained from discriminating against Blacks and other minority group members because of their race and/or national origin in violation of this Order.
 
 
 6
 ....
 
 
 7
 13. This Order, as modified, shall expire three (3) years from the date of entry hereof; notwithstanding the foregoing, EEOC shall have the right, upon good cause shown, to make application to the Court at least thirty (30) days prior to the expiration of this Order to have the same extended beyond the expiration date on such terms and conditions as the Court may direct.
 
 
 8
 (Emphases added.) The EEOC has never moved for an extension of the decree.
 
 
 9
 In November 1993, plaintiffs Grant and Ellis moved the court to find Local 40 in contempt for violating the 1980 consent decree.[1] The union countered with two defenses: (1) that the consent decree had expired in 1983, depriving the court of jurisdiction to enforce it, and (2) Grant and Ellis did not have standing to enforce the decree, which by its own terms placed enforcement power solely in the hands of the EEOC.
 
 
 10
 Judge Carter, who had inherited this case from Judge Werker, rejected both of these arguments. He asserted jurisdiction over the motion for contempt arising from the Werker Order, concluding that paragraph thirteen of the order neither dissolved the consent decree, nor deprived the court of its inherent power to enforce consent judgments. EEOC v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, 885 F.Supp. 488, 493-94 (S.D.N.Y.1994). He also found that Grant and Ellis had standing to enforce the Werker Order, both by the terms of the order and under Rule 71 of the Federal Rules of Civil Procedure. Id. The defendants moved the district court for an order certifying appeal of the order. The motion was denied. This appeal followed.
 
 DISCUSSION
 I.
 Jurisdiction
 
 11
 The first issue for our consideration is whether we have jurisdiction to hear this appeal. Ordinarily, federal courts of appeals may only exercise jurisdiction over "final decisions" of the district courts. 28 U.S.C. § 1291 (1993). However, appellants argue that 28 U.S.C. § 1292(a)(1) gives this court jurisdiction to review Judge Carter's order asserting jurisdiction over the 1980 consent decree. Section 1292 gives courts of appeals jurisdiction over certain interlocutory decisions, including orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...." 28 U.S.C. § 1292(a)(1) (1993).
 
 
 12
 To resolve this jurisdictional issue, we must consider the merits of the issue defendants seek to appeal. If the district court erroneously interpreted the terms of the consent decree, it "modified" that injunction within the meaning of § 1292(a)(1). If we conclude that such a modification has occurred, and that the order of the district court "might have a 'serious, perhaps irreparable, consequence' " for Local 40 that "can be 'effectually challenged' only by immediate appeal," Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981) (quoting Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955), overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)), then we have jurisdiction to review the order. In other words, we must consider the issue on appeal--whether the district court correctly interpreted the consent decree--to determine whether we have jurisdiction to consider the appeal at all.[2]
 
 II.
 The Merits
 
 13
 Consent decrees are interpreted according to principles of contract law. United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). As settlement agreements, the decrees themselves are compromises; "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation." United States v. Armour & Co., 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Thus, "[t]he court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir.1985). Instead, the language of a decree should define the obligations of the parties. Extrinsic evidence should only be considered when the decree itself is ambiguous. Armour, 402 U.S. at 682, 91 S.Ct. at 1757 ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."); SEC v. Levine, 881 F.2d 1165, 1179 (2d Cir.1989) ("Extrinsic evidence ... may generally be considered only if the terms of the judgment, or of documents incorporated in it, are ambiguous."). We review the district court's interpretation of a consent decree de novo. United States v. O'Rourke, 943 F.2d 180, 186 (2d Cir.1991); United States v. International Bhd. of Teamsters, 931 F.2d 177, 182 n. 1 (2d Cir.1991).
 
 
 14
 The district court found the consent decree at issue to be "at least ambiguous." Local 40, 885 F.Supp. at 493. It based this finding on a perceived conflict between the first paragraph of the decree, which provides that Local 40 is "permanently enjoined and restrained from discriminating against Blacks and other minority group members because of their race and/or national origin in violation of this Order," id. at 492, and the thirteenth paragraph of the decree, which provides that "[t]his Order, as modified, shall expire three (3) years from the date of entry hereof ... [absent a successful motion for extension by the EEOC.]" Id. at 492-93 (emphasis added).
 
 
 15
 We fail to perceive the conflict between these two provisions, and therefore disagree with the district court's finding of ambiguity. The thirteenth paragraph of the Werker Order unambiguously states that, absent a motion by the EEOC to extend the decree for good cause, the decree "shall expire" three years from its date of entry. The use of the word "permanently" in the first paragraph does not alter our conclusion. Judges often use the word "permanent" to distinguish post-litigation or post-settlement injunctions such as this one from the preliminary or temporary injunctions sometimes issued before full resolution of the merits. See, e.g., Roberts v. Madigan, 702 F.Supp. 1505, 1514 (D.Colo.1989) (discussing the different standards governing permanent and preliminary injunctive relief), aff'd, 921 F.2d 1047 (10th Cir.1990), cert. denied, 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992). Judge Werker's use of this term of art does not dilute the clear language of paragraph thirteen.
 
 
 16
 In asserting jurisdiction under the 1980 consent decree, the district court also relied on its inherent power to enforce its decrees and punish violators for contempt. The court noted that "even if the parties to the decree had meant to dissolve it after three years, 'the court has inherent power to enforce consent judgments, beyond the remedial "contractual" terms agreed upon by the parties.... Until parties to such an instrument have fulfilled their express obligations, the court has continuing authority and discretion ... to ensure compliance.' " Local 40, 885 F.Supp. at 494 (quoting EEOC v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, 925 F.2d 588, 593 (2d Cir.1991)). We disagree with the assertion of "inherent" jurisdiction in this case.
 
 
 17
 In the presence of the decree's termination clause, the district court does not have indeterminate power to ensure compliance with its terms. A court does not have inherent power to enforce an order that has expired. In this case, the court's enforcement authority expired when the decree expired. See Sanders v. Shell Oil, 678 F.2d 614, 617-18 (5th Cir.1982) (declining to extend application of consent decree beyond five year limit contained in decree). When it found otherwise, the district court relied on factually distinguishable cases interpreting consent decrees with terms that varied significantly from the terms of the Werker Order. Some of those decrees contained continuing jurisdiction clauses; others did not contain termination clauses. See, e.g., Local 580, 925 F.2d 588 (interpreting consent decree that contained a continuing jurisdiction clause but no clear termination clause); Berger v. Heckler, 771 F.2d at 1568 (enforcing a consent decree that did not contain an express termination clause, and noting that "[t]he court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree").
 
 
 18
 If we were to enforce this consent decree against Local 40 twelve years after its expiration, we would be depriving the union of the benefit of its bargain. The decree resulted from a negotiated settlement between Local 40 and plaintiffs. As part of the settlement, Local 40 agreed to institute numerous specific operational changes in its membership and referral practices. For example, it agreed to assign numbers to all job applicants, to keep a permanent register of people in the referral hall, and to name as union stewards a number of minorities equal to the number of minority members in the union. It also agreed to make a wide variety of records available to the EEOC for a period of two years, and to voluntarily submit to monitoring by the federal courts. In exchange for these concessions, the union received a concession from the plaintiffs--that the order would only be enforceable against Local 40 for three years, unless the EEOC was able to convince the district court that an extension was necessary. As the EEOC never moved for an extension, the union was released from the court's continuing jurisdiction in 1983.
 
 
 19
 The fact that Local 40 agreed to take on certain "permanent" responsibilities under the order, such as the permanent maintenance of certain logs and records, does not change the fact that the order expired. Local 40 was required to implement the permanent changes upon entry of the order. The EEOC had the authority to evaluate the union's compliance, and, if dissatisfied, to institute contempt proceedings. Furthermore, if the EEOC had reason to believe that the union planned to abandon the agreed-upon procedures upon expiration of the decree, it could move the court to extend the decree. Since it did not do so, the court is no longer able to hold the union in contempt of the decree.[3]
 
 
 20
 We hold that the district court modified the Werker Order when it found that the order did not expire in 1983. We also hold that to require Local 40 to submit to the jurisdiction of the district court under the terms of an expired order would have "serious, perhaps irreparable, consequence" for the union, and that Local 40 could not "effectually challenge" this act except by immediate appeal. See Carson, 450 U.S. at 86-88, 101 S.Ct. at 997-98 (holding that interlocutory review of the refusal of a consent decree may be appropriate when petitioners might lose their opportunity to settle their case on negotiated terms); Roberts v. St. Regis Paper Co., 653 F.2d 166, 170 (5th Cir.1981) (holding that, where appellants contended that an injunction had expired by its own terms, the refusal to dissolve the injunction would have " 'serious, perhaps irreparable, consequence' " for appellants and could be " 'effectually challenged' " only on immediate review (quoting Carson, 450 U.S. at 84, 101 S.Ct. at 996-97)). As a result, we have jurisdiction to review the judgment of the district court under 28 U.S.C. § 1292(a)(1). See U.S. v. O'Rourke, 943 F.2d at 186.
 
 
 21
 We reverse the district court's order asserting jurisdiction over Local 40 pursuant to the 1980 consent decree, since we find that the decree had expired by its own terms. Given this holding, there is no need to address the parties' arguments about the plaintiffs' standing to enforce it.
 
 
 22
 The order of the district court is reversed.
 
 
 
 [1]
 Plaintiffs also asked Judge Carter to find defendants in contempt of a 1979 order issued by Judge Knapp, ordering defendant Local 40 and the Bethlehem Steel Corporation to stop retaliating against plaintiffs Grant and Ellis. Grant v. Bethlehem Steel Corp., No. 76 Civ. 847 (S.D.N.Y. May 10, 1979). Judge Carter declined to assert jurisdiction over the 1979 Partial Judgment of Judge Knapp on the grounds that "[a] motion for contempt of an order issued by Judge Knapp should be brought before Judge Knapp. Plaintiffs have proffered no reasons why Judge Knapp cannot hear the contempt motion, so I decline to exercise jurisdiction over the motion for contempt of the Knapp order." EEOC v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, 885 F.Supp. 488, 490 (S.D.N.Y.1994). Plaintiffs have not appealed that portion of the holding
 
 
 [2]
 Courts undertaking this examination have acknowledged the "circuity in the process: we must at least look through the door to see if we should open it." Fern v. Thorp Public School, 532 F.2d 1120, 1129 n. 6 (7th Cir.1976) (holding an examination of preliminary injunction required before court could determine whether it could review grant of preliminary injunction); see also Wilder v. Bernstein, 49 F.3d 69, 72 (2d Cir.1995) ("In order to determine whether the ruling modifies the Decree, we must assess its merits because if the Judge correctly construed the Decree, he did not modify it, but if he erred in his construction, he did modify it.")
 
 
 [3]
 This does not deprive the plaintiffs of the ability to seek a remedy against Local 40 for any violation of the law. The plaintiffs may file a new lawsuit against the union. In fact, the parties informed us at oral argument that the plaintiffs have already done so