14-1158-cv(L)
Pandora Media, Inc. v. American Society of Composers, Authors and Publishers

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2014

Nos. 14-1158-cv(L), 14-1161-cv(Con), 14-1246-cv(Con)

PANDORA MEDIA, INC.,
*Petitioner-Appellee*,

*v.*

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,
*Respondent-Appellant*,

UNIVERSAL MUSIC PUBLISHING, INC., SONY/ATV MUSIC PUBLISHING
LLC, EMI MUSIC PUBLISHING,
*Intervenors-Appellants.*

---

Appeals from the United States District Court
for the Southern District of New York.
No. 12-cv-8035 — Denise Cote, *Judge*.

---

ARGUED: MARCH 19, 2015
DECIDED: MAY 6, 2015

---

Before: LEVAL, STRAUB, and DRONEY, *Circuit Judges*.

Appeals from an opinion and order of the United States District Court for the Southern District of New York (Cote, *J.*) setting the Pandora-ASCAP licensing rate for the period of January 1, 2011 through December 31, 2015, and from all preliminary findings, rulings, and orders subsumed therein, including an opinion and order granting summary judgment to Petitioner-Appellee on the ground that the consent decree governing Respondent-Appellant's licensing activities unambiguously precludes partial withdrawals of public performance licensing rights.  We **AFFIRM**.

JEFFREY S. BUCHOLTZ, King & Spalding LLP, Washington, DC (Ethan P. Davis, King & Spalding LLP, Washington, DC; Kenneth L. Steinthal, Joseph R. Wetzel, King & Spalding LLP, San Francisco, CA, *on the brief*), *for Petitioner-Appellee.*

JAY COHEN, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY (Eric A. Stone, Darren W. Johnson, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Richard H. Reimer, American Society of Composers, Authors and Publishers, New York, NY, *on the brief*), *for Respondent-Appellant*.

DANIEL P. COLLINS (Glenn D. Pomerantz, Melinda LeMoine, *on the brief*), Munger, Tolles & Olson LLP, Los Angeles, CA, *for Intervenor-Appellant Universal Music Publishing, Inc.*

DONALD S. ZAKARIN (Frank Phillip Scibilia, Erich C. Carey, *on the brief*), Pryor Cashman LLP, New York, NY, *for Intervenors-Appellants Sony/ATV Music Publishing LLC and EMI Music Publishing*.

Scott A. Edelman (Linda Dakin-Grimm, Atara Miller, *on the brief*), Milbank, Tweed, Hadley & McCloy LLP, New York, NY, *for Broadcast Music, Inc. as* amicus curiae *in support of Respondent-Appellant*.

Renata B. Hesse, Acting Assistant Attorney General, United States Department of Justice, Antitrust Division, Washington, DC, *for the United States of America as* amicus curiae.

PER CURIAM:

These appeals are taken from an opinion and order of the United States District Court for the Southern District of New York (Cote, *J.*), dated March 14, 2014, filed under seal and entered March 14, 2014, and filed publicly March 18, 2014 and entered March 19, 2014, along with all preliminary findings, rulings, and orders subsumed therein, including an opinion and order dated and entered September 17, 2013.

At issue are two separate decisions of the district court. The first granted summary judgment to Petitioner-Appellee Pandora Media, Inc. ("Pandora") on the issue of whether the consent decree governing the licensing activities of Respondent-Appellant American Society of Composers, Authors and Publishers ("ASCAP") unambiguously precludes partial withdrawals of public performance licensing rights. *See In re Pandora Media, Inc.*, No. 12 CIV. 8035 (DLC), 2013 WL 5211927 (S.D.N.Y. Sept. 17, 2013). The

4

second decision, issued after a bench trial, set the rate for the Pandora-ASCAP license for the period of January 1, 2011 through December 31, 2015 at 1.85% of revenue. *See In re Pandora Media, Inc.*, 6 F. Supp. 3d 317 (S.D.N.Y. 2014).

ASCAP and Intervenors-Appellants Universal Music Publishing, Inc. ("Universal"), Sony/ATV Music Publishing LLC ("Sony"), and EMI Music Publishing ("EMI") (collectively with ASCAP, "Appellants") challenge the summary judgment order, and ASCAP challenges the rate-setting order with respect to the years 2013-2015.

For the reasons set forth below, we **AFFIRM** the orders of the district court.

## BACKGROUND

Though we assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, we offer a brief overview to serve as context for the discussion that follows.

## I.    The ASCAP Consent Decree

ASCAP is a performing rights organization that represents almost half of all composers and music publishers in the United States. *See ASCAP v. MobiTV, Incorporation*, 681 F.3d 76, 78 (2d Cir. 2012). "These composers grant to ASCAP the non-exclusive right to license public performances of their music." *Id.* "Because of concerns that ASCAP's size grants it monopoly power in the performance-rights market, it is subject to a judicially-administered consent decree, the most recent version of which was entered into on June 11, 2001." *Id.* at 79; *see United States v. ASCAP*, No. 41-1395 (WCC), 2001 WL 1589999 (S.D.N.Y. June 11, 2001) ("AFJ2").

The core operative provision of AFJ2 provides, in pertinent part, that ASCAP must "grant to any music user making a written request therefor a non-exclusive license to perform all of the works in the ASCAP repertory." AFJ2 § VI. The decree defines "ASCAP repertory" as "those works the right of public performance of which ASCAP has or hereafter shall have the right to license at the relevant

6

point in time." *Id.* § II(C). "Right of public performance" is defined, in pertinent part, as "the right to perform a work publicly in a nondramatic manner." *Id.* § II(Q).

When a music user requests "a license for the right of public performance of any, some or all of the works in the ASCAP repertory," ASCAP is required to notify the user of what it deems to be a reasonable fee for the license requested. *Id.* § IX(A). If certain prescribed periods of time elapse without the parties reaching an agreement, each party is granted the right to petition the United States District Court for the Southern District of New York, which retained jurisdiction, to set a reasonable fee. *Id.* §§ IX(A), XIV. While the rate determination is pending, the license applicant "shall have the right to perform any, some or all of the works in the ASCAP repertory to which its application pertains." *Id.* § IX(E).

ASCAP is permitted, "when so directed by the member in interest in respect of a work, [to restrict] performances of a work in

order reasonably to protect the work against indiscriminate performances, or the value of the public performance rights therein, or the dramatic or 'grand' performing rights therein." *Id.* § IV(F).

**II.      The Partial Withdrawals and Direct Licenses**

Beginning around 2010, certain ASCAP members grew concerned that ASCAP was receiving below-market rates for public performance licenses to new media companies such as Pandora. These members sought to withdraw from ASCAP the right to license their works to new media music users, preferring to negotiate with new media music users outside the ASCAP framework. EMI, in particular, threatened to withdraw from ASCAP completely if ASCAP did not change its practices, so as to allow publishers to withdraw from ASCAP the right to license new media music users while continuing to license ASCAP to license other media. In response, ASCAP modified its internal compendium of rules to permit this practice. EMI withdrew its new media licensing rights

8

shortly thereafter, effective May 1, 2011. Sony withdrew its new media licensing rights effective January 1, 2013, and Universal withdrew its new media licensing rights effective July 1, 2013.

Also in 2010, Pandora terminated its existing ASCAP license and requested a new license for the period running from January 1, 2011 to December 31, 2015. Each of EMI, Sony, and Universal ultimately entered into a direct license with Pandora.

### III. The District Court Proceedings

Pandora filed its rate court petition in the United States District Court for the Southern District of New York in November 2012, prior to the execution of its direct licenses with Sony and Universal. In June 2013, Pandora moved for summary judgment on the issue of the partial withdrawals. The district court granted Pandora's motion. *In re Pandora Media, Inc.*, No. 12 CIV. 8035 (DLC), 2013 WL 5211927 (S.D.N.Y. Sept. 17, 2013). Sony, EMI, and

9

Universal were subsequently granted leave to intervene in the district court *nunc pro tunc* to September 13, 2013.

The district court conducted a bench trial on the rate issue beginning January 21, 2014 and ending February 10, 2014. On March 14, 2014, the court issued a sealed opinion and order setting the licensing rate. A public version of that decision was filed on March 18, 2014 and was entered the following day. *See In re Pandora Media, Inc.*, 6 F. Supp. 3d 317 (S.D.N.Y. 2014). Pandora had sought a 1.70% rate for all five years of the license, while ASCAP proposed an escalating rate: 1.85% for 2011-2012, 2.50% for 2013, and 3.00% for 2014-2015. *See id.* at 320. The district court set the rate for all five years at 1.85%. *See id.*

ASCAP, Sony/EMI,[1] and Universal each filed a notice of appeal on April 14, 2014. ASCAP's appeal of the rate determination pertains solely to the years 2013-2015.

---

[1] In 2012, Sony became the administrator of EMI's music catalog. Sony and EMI thus proceed together in this action.

10

## DISCUSSION

### I. Summary Judgment on Partial Withdrawals

We review *de novo* a district court's grant of summary judgment. *See Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79 (2d Cir. 2009). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation and internal quotation marks omitted). A district court's interpretation of a consent decree is also subject to *de novo* review. *See E.E.O.C. v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 80 (2d Cir. 1996).

Appellants contend that publishers may withdraw from ASCAP its right to license their works to certain new media music users (including Pandora) while continuing to license the same works to ASCAP for licensing to other users. We agree with the district court's determination that the plain language of the consent decree unambiguously precludes ASCAP from accepting such partial withdrawals. The decree's definition of "ASCAP repertory" and other provisions of the decree establish that ASCAP has essentially equivalent rights across *all* of the works licensed to it. The licensing of works through ASCAP is offered to publishers on a take-it-or-leave-it basis. As ASCAP is required to license its entire repertory to all eligible users, publishers may not license works to ASCAP for licensing to some eligible users but not others.

Appellants would have us rewrite the decree so that it speaks in terms of the right to license the particular subset of public performance rights being sought by a specific music user. This

reading is foreclosed by the plain language of the decree, rendering Appellants' interpretation unreasonable as a matter of law. *Cf. Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003) ("A court may not replace the terms of a consent decree with its own . . . ." (citation and internal quotation marks omitted)).

This outcome does not conflict with publishers' exclusive rights under the Copyright Act. Individual copyright holders remain free to choose whether to license their works through ASCAP. They thus remain free to license—or to refuse to license— public performance rights to whomever they choose. Regardless of whether publishers choose to utilize ASCAP's services, however, ASCAP is still required to operate within the confines of the consent decree.

The partially withdrawn works at issue remain in the ASCAP repertory pursuant to the plain language of the consent decree. Since section VI of the decree provides for blanket licenses covering

*all* works contained in the ASCAP repertory, it necessarily follows that the partial withdrawals do not affect the scope of Pandora's license.

**II.    Rate-Setting**

We review the district court's rate determination for reasonableness.  *See Broad. Music, Inc. v. DMX Inc.*, 683 F.3d 32, 45 (2d Cir. 2012).  This review involves two components:  "we must find both that the rate is substantively reasonable (that it is not based on any clearly erroneous findings of fact) and that it is procedurally reasonable (that the setting of the rate, including the choice and adjustment of a benchmark, is not based on legal errors)."  *United States v. Broad. Music, Inc.*, 426 F.3d 91, 96 (2d Cir. 2005).  The district court's factual findings are reviewed for clear error, and conclusions of law are reviewed *de novo.  See ASCAP v. MobiTV, Incorporation*, 681 F.3d 76, 82 (2d Cir. 2012).

14

Having reviewed the record and the district court's detailed examination thereof, we conclude that the district court did not commit clear error in its evaluation of the evidence or in its ultimate determination that a 1.85% rate was reasonable for the duration of the Pandora-ASCAP license. We likewise conclude that the district court's legal determinations underlying that ultimate conclusion—including its rejection of various alternative benchmarks proffered by ASCAP—were sound. *Cf. ASCAP v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563, 571 (2d Cir. 1990) ("Ultimately, the Magistrate weighed all of the evidence and found, as a matter of fact, that ASCAP had not sustained its burden of proving that its price . . . was reasonable. No legal error contributed to that finding, and the finding itself, adequately supported by the record, is not clearly erroneous.").

Although ASCAP challenges the district court's presumption that a rate found to be reasonable for part of a license term remains

reasonable for the duration thereof, the district court expressly observed that its holding did not depend on the existence of such a presumption. ASCAP failed to carry its burden of proving that its proposed rate was reasonable. Under these circumstances, it was not clearly erroneous for the district court to conclude, given the evidence before it, that a rate of 1.85% was reasonable for the years in question.

Nor was it an abuse of discretion for the district court to refuse ASCAP's request for additional discovery regarding recent Pandora licenses. *See generally Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994) ("Discovery rulings are reviewed for abuse of discretion."). As the district court correctly observed, contextual evidence would have been necessary in order to determine whether those licenses could serve as reliable benchmarks. The district court acted well within its discretion in declining to delay trial to accommodate this discovery, and it therefore follows *a fortiori* that

the court did not commit legal error in failing to consider these potential benchmarks when setting the Pandora-ASCAP licensing rate.

**CONCLUSION**

We have considered Appellants' remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the orders of the district court.