300 Ga. 771
FINAL COPY

S17Q0345. iHEARTMEDIA, INC. v. SHERIDAN et al.

MELTON, Presiding Justice.

In this case regarding the interpretation of Georgia's Criminal Reproduction and Sale of Recorded Material Statute, OCGA § 16-8-60, the United States District Court for the Middle District of Georgia has certified the following question for our consideration:

> Whether the exemption to OCGA § 16-8-60, set forth in § 16-8-60 (c) (l), applies such that internet radio services are exempt from application of § 16-8-60?

For the reasons set forth below, we find that the type of Internet radio services being offered by iHeartMedia, Inc. in this case do fall under the exemption set forth in OCGA § 16-8-60 (c) (l).

The underlying facts of this case, as set forth by the District Court, show that Arthur and Barbara Sheridan are the owners of several pre-1972 master sound recordings of certain popular songs, as well as the associated intellectual

property and contract rights.[1] iHeartMedia is an operator of AM/FM radio stations, sometimes referred to as terrestrial stations, as well as Internet radio services. These latter services allow listeners to access and listen to a song through an Internet-connected device such as a tablet, computer, or smartphone. It is undisputed that iHeartMedia streamed the Sheridans' recordings to listeners over its Internet radio platform, iHeartRadio.[2] It is also undisputed that iHeartMedia has no license, authority, or consent from the Sheridans to stream the recordings, and iHeartMedia has not compensated the Sheridans for the use of their recordings.

On September 29, 2015, the Sheridans filed a complaint against iHeartMedia alleging violations of OCGA § 16-8-60,[3] which prohibits the

---

[1] Federal copyright law has preempted state laws pertaining to sound recordings published post-1972. See 17 USC § 301 (c). Individual states, however, may continue to regulate sound recordings made prior to 1972. See Sound Recording Act of 1971, Pub. L. No. 92-140, 85 Stat. 391.

[2] As is applicable to the services at issue in this case, streaming transfers digital "packets" of information to the random access memory of the internet-connected device, allowing the music to be played, but not permanently stored.

[3] In subsection (a) (1), this statute provides:

(a) It is unlawful for any person, firm, partnership, corporation, or association knowingly to: (1) Transfer or cause to be transferred any sounds or visual images recorded on a

2

transfer of sound recordings without permission and provides criminal sanctions for violators.[4] The Sheridans claim that iHeartMedia needed their consent to transfer their master sound recordings to iHeartRadio listeners, and that iHeartMedia engaged in racketeering activity by making unauthorized transfers. See OCGA § 16-14-1. iHeartMedia moved to dismiss the Sheridans' complaint under the radio broadcast exemption in OCGA § 16-8-60 (c) (1), which states that OCGA § 16-8-60 does not apply to "any person who transfers or causes to be transferred any such sounds or visual images intended for or in connection with radio or television broadcast transmission or related uses." This motion prompted the District Court to certify the question now before us.

Our well established rules of statutory interpretation presume

that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and

---

phonograph record, disc, wire, tape, videotape, film, or other article on which sounds or visual images are recorded onto any other phonograph record, disc, wire, tape, videotape, film, or article without the consent of the person who owns the master phonograph record, master disc, master tape, master videotape, master film, or other device or article from which the sounds or visual images are derived[.]

[4] The Sheridans filed their suit as a putative class action on behalf of all other similarly situated owners of pre-1972 recordings.

ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would . . . [and] if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) Deal v. Coleman, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013). On its face, OCGA § 16-8-60 (c) (1) provides an exemption for *both* radio broadcast transmissions *and* related uses. If iHeartMedia's Internet radio services fall under either of these categories, the prohibitions of OCGA § 16-8-60 do not apply to iHeartRadio.

The services provided by iHeartRadio do qualify, at the least, as a related use to a radio broadcast transmission[5] for two main reasons: (1) the user experiences offered by iHeartMedia and terrestrial AM/FM radio are substantially similar, and (2) the nature of the streaming of sound recordings by iHeartRadio and the nature of the broadcast by terrestrial AM/FM radio are

_____

[5] In reaching this conclusion, we need not determine an exhaustive definition of radio broadcast transmissions. We need only conclude that such transmissions do include the traditional broadcast of music by terrestrial AM/FM stations.

qualitatively the same.[6]

First, with regard to user experience, iHeartRadio is nearly identical to terrestrial AM/FM radio. For example, one of iHeartMedia's Internet services, "simulcast," concurrently broadcasts the exact programming offered by its terrestrial radio stations over the Internet. The only difference for the listener is that the music would be accessed through an Internet-connected device such as a smartphone or computer, rather than a traditional radio receiver. iHeartMedia's other radio service, which allows users to "build" their own station around a particular song, band, genre, etc., provides for more user input, but is not an on demand service, and ultimately resembles someone selecting a terrestrial AM/FM station based on the station's advertised genre of music. Therefore, from the perspective of the listener, a shift from an AM/FM radio to an Internet radio service would mean only minor changes to the user's experience.

---

[6] The General Assembly did not provide any limitation to definitions of terms within OCGA § 16-8-60 (c) (1). Therefore, we apply the common definition of "related," which is: "connected by reason of an established or discoverable relation." This definition appears to have been constant for decades, both before and after the 1975 enactment of the statute in question. See, e.g., Webster's Third New International Dictionary (1969); Webster's Ninth New Collegiate Dictionary (1985); Merriam-Webster Dictionary (2017 online edition).

Second, with regard to the nature of the sound transmission, Internet radio services provide sound recordings in a very similar way as terrestrial AM/FM radio, though some technological differences exist. iHeartRadio digitally broadcasts a track to the listener for a single use, and then the track disappears from the listener's device. Practically, this is identical to the manner in which a listener experiences AM/FM radio broadcast sound recordings — the song is only temporarily played by the user's radio.[7] In either format, the listener may enjoy the recording, but the transmission of the recording is not stored for replaying.

Therefore, because there is no significant difference in either the user experience or the nature of the broadcast of sound recordings between terrestrial AM/FM and Internet transmissions of the type offered by iHeartMedia in this case, the latter is a related use of the former. Accordingly, we answer the certified question as follows: The exemption to OCGA § 16-8-60, set forth in

---

[7] We note that at least one federal court defined an Internet streaming music service similar to the one in question as "radio" regardless of any technological differences that exist between an AM/FM radio station and an Internet radio service. See In re Pandora Media, Inc., 6 FSupp.3d 317 (SDNY 2014), aff'd, 785 F3d 73 (2d Cir. 2015).

OCGA § 16-8-60 (c) (l), applies such that internet radio services of the type offered by iHeartMedia are exempt from application of OCGA §16-8-60.

Certified question answered. All the Justices concur.

Decided March 20, 2017.

Certified question from the United States District Court for the Middle District of Georgia.

Miller & Martin, Daniel P. Griffin, Michael P. Kohler; Latham & Watkins, Andrew M. Glass, James K. Lynch, Jonathan Y. Ellis, Gregory G. Garre, for appellant.

Lee Durham, Joseph P. Durham, Jr.; Howard W. Foster, Matthew A. Galin; Justin Sobodash; Abner & Fullerton, Tony Abner, for appellees.

Robert C. Khayat, Jr., amicus curiae.