16-3830-cv
United States v. Broadcast Music, Inc.

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand seventeen.

PRESENT: DENNIS JACOBS,
REENA RAGGI,
CHRISTOPHER F. DRONEY,
          Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
United States of America,
          Plaintiff-Appellant,

          -v.-                                16-3830-cv

Broadcast Music, Inc.,
          Defendant-Appellee.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:               Mary Helen Wimberly (Brent
                             Snyder, Owen Kendler, Daniel E.
                             Haar, Bennett Matelson, Kristen
                             C. Limarzi, James J. Fredricks,
                             Robert J. Wiggers, on the
                             brief), United States Department
                             of Justice Antitrust Division,
                             Washington, D.C.

FOR APPELLEES:               Scott A. Edelman (Fiona A.
                             Schaeffer, Atara Miller, Rachel

1

Penski Fissell, Eric I. Weiss, on the brief), Milbank, Tweed, Hadley & McCloy LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stanton, J.)

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

The United States Department of Justice Antitrust Division ("DOJ") appeals from the judgment of the United States District Court for the Southern District of New York interpreting the consent decree between it and Broadcast Music, Inc. ("BMI"). The court ruled that the consent decree neither requires full-work licensing nor prohibits fractional licensing of BMI's affiliates' compositions. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

BMI is a non-profit performance rights organization ("PRO") founded in 1939 that holds the public performance rights in over 10 million musical works. It serves as an agent for songwriters and publishers, negotiating rates, issuing licenses, and collecting fees. These original rights-holders--BMI's "affiliates"--grant BMI nonexclusive power to license performance rights to their works. The usual form of distribution offered by BMI (and its primary competitor, the American Society of Composers, Authors, and Publishers ("ASCAP")) is a "blanket license" to all rights held by BMI to any and all affiliated works. See Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 189 (S.D.N.Y. 2016). Blanket licenses from BMI and ASCAP would license nearly every domestic copyrighted composition.

After the DOJ challenged the blanket license as an illegal restraint of trade, BMI entered into a 1966 consent decree, amended in 1994. See Broad. Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 10-11 (1979) ("BMI v. CBS"); United States v. Broad. Music, Inc., 1966 U.S. Dist. LEXIS 10449 (S.D.N.Y. Dec. 29, 1966); United States

2

v. Broad. Music, Inc., 1994 U.S. Dist. LEXIS 21476 (S.D.N.Y. Nov. 18, 1994). The dispute in this case is whether, under the consent decree, "fractional" interests BMI has acquired through its affiliates to a co-owned work are included in BMI's repertory and may be included in the blanket license.

The Copyright Act vests the creators of copyrighted musical compositions with exclusive rights to public performance, and provides that copyrights may be co-owned. See 17 U.S.C. §§ 106, 201(a). BMI offers a "full-work license" when its affiliates own the full set of rights to a work such that a licensee may immediately perform it without risk of infringement. For some works, however, the co-owners have allocated between themselves fractional interests of exclusive ownership, and then elected to affiliate with different PROs. In these instances, BMI may hold the right to public performance of fewer than all collaborators; if BMI holds only a fractional interest in a composition, it offers a license to only that share. See J. App'x at 55. The decree does not address the issue of fractional versus full work licensing, and the parties agree that the issue did not arise at the time of the 1966 and 1994 amendments.

On August 4, 2016, the DOJ closed a review of the ASCAP and BMI Consent Decrees. It concluded that "the consent decrees, which describe PROs' licenses as providing the ability to perform 'works' or 'compositions,' require ASCAP and BMI to offer full-work licenses" to the exclusion of fractional licenses. See J. App'x at 66. It further observed that "only full-work licensing can yield the substantial procompetitive benefits associated with blanket licenses." Id. DOJ conceded that if a PRO holds fewer than all rights to a composition, a policy limited to full-work licenses may "make it impossible for ASCAP or BMI ... to include that song in their blanket licenses." Id. at 76.

Immediately afterward, BMI asked Judge Stanton for a pre-motion conference. BMI argued that because the decree did not prohibit fractional licensing, it was permitted. Judge Stanton observed that "[n]othing in the Consent Decree gives support to the [Antitrust] Division's views,"

3

United States v. Broad. Music, Inc., 207 F. Supp. 3d 374, 376 (S.D.N.Y. 2016), and held that the "Consent Decree neither bars fractional licensing nor requires full-work licensing." Id. at 377.

We review the district court's interpretation of a consent decree de novo. Broad. Music, Inc. v. DMX, Inc., 683 F.3d 32, 43 (2d Cir. 2012).

This appeal begins and ends with the language of the consent decree. It is a "well-established principle that the language of a consent decree must dictate what a party is required to do and what it must refrain from doing." Perez v. Danbury Hosp., 347 F.3d 419, 424 (2d Cir. 2003); United States v. Armour & Co., 402 U.S. 673, 682 (1971) ("[T]he scope of a consent decree must be discerned within its four corners..."). "[C]ourts must abide by the express terms of a consent decree and may not impose additional requirements or supplementary obligations on the parties even to fulfill the purposes of the decree more effectively." Perez, 347 F.3d at 424; see also Barcia v. Sitkin, 367 F.3d 87, 106 (2d Cir. 2004) (internal citations omitted) (The district court may not "impose obligations on a party that are not unambiguously mandated by the decree itself."). Accordingly, since the decree is silent on fractional licensing, BMI may (and perhaps must) offer them unless a clear and unambiguous command of the decree would thereby be violated. See United States v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 998 F.2d 1101, 1107 (2d Cir. 1993); see also Armour, 402 U.S. at 681-82.

DOJ relies on the provisions that require BMI to license "the compositions in defendant's repertory," and that define BMI's "repertory" as "those compositions, the right of public performance of which the defendant has or hereafter shall have the right to license or sublicense." J. App'x at 23, 26, 31-32 (Art. II(C), Art. XIV(A)). Although "the right of public performance" is not defined, DOJ urges that it means specifically and exclusively "the immediate right to actually perform" the work without risk of infringement, a right that cannot be conferred by a fractional license. We are unpersuaded, for several reasons.

4

The "right of public performance" is a term of art in copyright law.  See 17 U.S.C. §§ 106(4), 201(a); see also Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir. 1985) (In interpreting a consent decree, "deference is to be paid to ... the normal usage of the terms selected.")  The Copyright Act contemplates that the right of public performance "may be transferred in whole or in part" and "owned separately," including as a "subdivision" of the right.  See 17 U.S.C. § 201(d).  Each individual co-owner has a right to public performance, and such a right is not associated specifically with "full-work" licensing or with an indivisibility principle.  See Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 617-18 (2d Cir. 2001)(parties are presumed to intend the established legal meaning of a phrase in a contract).

As Judge Stanton observed, the blanket license itself does not necessarily confer a right of immediate public performance: the license covers all the rights held by the PRO regardless of whether those rights are valid or invalid, exclusive or shared, complete or incomplete.  See J. App'x at 33 (Art. XIV(D))("Nothing in this Article XIV shall prevent any applicant from attacking ... the validity of the copyright of any of the compositions in defendant's repertory nor shall this Judgment be construed as importing any validity or value to any of said copyrights.").

Extrinsic evidence does not assist the DOJ.  The decree was amended in 1994 at a time when fractional licensing was apparently common practice.  "If the parties had agreed to such a prohibition, they could have chosen language that would have established the sort of prohibition that the Government now seeks."  Armour, 402 U.S. at 679.

DOJ relies on Pandora Media, Inc. v. ASCAP, 785 F.3d 73 (2d Cir. 2015), which held that the ASCAP consent decree unambiguously prohibits a publisher's "partial withdrawal" of the right to license its works to certain music users: since the decree requires ASCAP "to license its entire repertory to all eligible users, publishers may not license works to ASCAP for licensing to some eligible users but not others."  Id. at 77.  Pandora is not on point.  BMI is not proposing to discriminate between licensees; and the case

5

does not consider fractional licensing. BMI seeks to offer *all* its interests, full and fractional, to any user in a manner entirely consistent with Pandora. Id. at 78 (noting the "decree provides for blanket licenses covering *all* works contained in the ASCAP repertory").

DOJ also relies on BMI v. CBS, which identified one procompetitive benefit of the blanket licensing arrangement as allowing "the licensee immediate use of the covered compositions, without the delay of prior individual negotiations and great flexibility in the choice of musical material." BMI v. CBS, 441 U.S. at 21-22. Use of the phrase "immediate use" does not imply a rule that BMI may license music rights only if they are complete, or full-work. The Court explained one procompetitive feature of the blanket license that reduces transaction costs of individual bargaining among rights-holders; it did not offer an interpretation of the terms of the decree or set forth a standard that must be satisfied. In any event, the blanket license reduces transaction costs even if it obviates individual bargaining only as to the fractional rights it includes. Neither the language of the opinion nor the consent decree itself guarantees immediate performance with respect to every composition.

To the extent DOJ asks us read an additional requirement into the decree to advance these procompetitive objectives, we are foreclosed from doing so. See Teamsters, 998 F.2d at 1107; King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). It would be inappropriate to consider, on an incomplete record, the potential competitive impact of our interpretation. The parties agree, but some amici urge nevertheless that we should reject BMI's interpretation because allowing fractional licensing would impair the procompetitive aspects of the consent decree and give rise to anticompetitive consequences. Such arguments are "out of place:" "although the relief . . . may be in keeping with the purposes of the antitrust laws, we do not believe that it is supported by the terms of the consent decree under which it is sought." Armour, 402 U.S. at 681, 683.

If the DOJ decides that the consent decree, as interpreted by the district court, raises unresolved

6

competitive concerns, it is free to move to amend the decree or sue under the Sherman Act in a separate proceeding.  See id. at 674-75 ("If the Government had wished to test" whether the challenged activity was unlawful, "it could have brought an action to enjoin" it under the antitrust laws, or "it could have sought modification of the [Consent] Decree itself.").

For the foregoing reasons, and finding no merit in the DOJ's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK